May it please the Court? My name is Katherine Keegaver. I'm appointed counsel for the appellant, Mr. Velazquez. I'd like to reserve three minutes for rebuttal. Thank you for your pro bono representation. The core of this dispute is whether the district court had subject matter jurisdiction over Mr. Velazquez's claims or whether Brooker Feldman bars his lawsuit because it is a de facto appeal of a state court judgment. But Mr. Velazquez's injury does not stem from the legal or factual errors of a state court judgment as required by both this court and the Supreme Court's precedent. Mr. Velazquez's injury stems from the conduct of defendants and defendants injured Mr. Velazquez when they violated his constitutional rights by wrongfully seizing his property. Papers that include some of the only copies of documents that he needs for his post-conviction relief proceedings. And defendants denied him those papers for over a year without affording him any pre-deprivation hearing. The first issue this court must address is subject matter jurisdiction. The Supreme Court in Exxon held that the Rooker Feldman doctrine is to be applied narrowly and only applies to cases from which the doctrine acquired its name. Namely, cases brought by state court losers complaining of injuries caused by state court judgments rendered before district court proceedings commenced and inviting district court review and rejection of those judgments. Consistent with the elements enumerated in Exxon and cited favorably by the Supreme Court in Exxon, this court in Noel has already established a two-factor test for determining whether the Rooker Feldman doctrine applies. First, the court has to determine whether a de facto appeal exists. A de facto appeal exists when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that erroneous decision. If, by contrast, a federal plaintiff asserts as a legal wrong the illegal acts or omissions of adverse parties, then a plaintiff seeks relief from a state court judgment. Such a suit is not a forbidden de facto appeal. I'm not sure as to my fellow panelists, but you're pushing it at open door for me with respect to Rooker Feldman. Correct. On the other hand, we can affirm on any ground. Yes. So I'm more interested in the other grounds because that may be your more serious problem. Agreed. Why is there a Fourth Amendment violation here? Any meaningful interference with property is a violation of the Fourth Amendment. That is this Court's decision in Lavonby City of Los Angeles, citing the Supreme Court's decisions in Soldall and U.S. v. Jacobson. The defendants seized Mr. Velasquez's property and interfered with his ability to use his property in any manner. Why was the post-deprivation hearing and remedy not sufficient to cure it? So the Supreme Court has held in Fuentes v. Shevin that a post-deprivation remedy cannot alter the fact that a wrongful taking has occurred and that a pre-deprivation remedy should have been afforded. And pre-deprivation remedies are appropriate when you can predict that the deprivation can occur. And even temporary deprivations come within the purview of the Due Process Clause. Defendants can point to no competing governmental interest that justifies denying him a pre-deprivation hearing. There was no need for immediate action. These were not negligent acts or the unauthorized acts by defendants. These were intentional acts. And Mr. Logan, as the head of OPDS, is the, you know, State court or State authority who has the power to effectuate the deprivation at issue. So the defendant was entitled to or Mr. Velasquez was entitled to a pre-deprivation hearing. So the interference was they wouldn't give the key? Is that what it was? And they changed the lock. The, yeah, the access code on the storage locker. So nobody could enter the storage locker to exchange boxes for Mr. Velasquez. I thought the Superior Court judge that was handling, the second one that was handling the matter, was very concerned about the security of the documents. So he was concerned about the mitigation. And the safekeeping of the documents. So there would be no interference. So later on there would be no claim that somebody had messed with the documents. So he was concerned about the mitigation and investigative materials. Ms. McCloskey and Ms. Hardy placed those documents in there. Those materials were not supposed to be in the storage locker. It was just the 30 boxes that held Mr. Velasquez's papers. The judge was not concerned about the security of those 30 boxes, if you read his order. He was just concerned about the mitigation and investigative materials. And we sort of, we have two separate sets of property to which Mr. Velasquez is claiming an injury, the mitigation and investigative materials and the, his papers. So your contention is, is that when the mitigation files were placed in this, in the security location, that that was interfering with his right to those documents? It subsequently ended up interfering with his ability to access those documents. Yes. Are the public defenders state actors for purposes of 1983? Mr. Logan, as the head of the Office of Public Defense Services, yes, is a state actor. That is this Court's decision. Apologies. But, yes, Mr. Logan is a state actor. And because- And as a state actor under 1983, does he have some sort of immunity, such as qualified immunity? Yes. Yes, he is entitled to qualified immunity. Yeah, that's my, that's the real sticking point for me. I mean, this is an unclear situation as to what's to be done. And Mr. Logan, as I look at it, is trying to figure out what's to be done, and he's puzzled, and he might have made a mistake. But if it's just a mistake and it's confusing, and here we have an experienced lawyer trying to figure out what the right thing to do is, that sounds like qualified immunity to me. But Mr. Velasquez has a very clearly established right in his property. We're talking about papers. They're specifically enumerated in the Fourth Amendment. Yeah, but the problem is, we understand he has a right to the papers, but he might be represented, he might not be represented. We've got a conflict. His sister wants them. Well, his sister is not his lawyer, and he may be represented at this time. So in terms of what the right means in the context of the facts here, that's the confusing part. Understood. So when Mr. Logan first seized the storage locker, he did not do it because he was attempting to protect the property or that he knew anything about this situation. He did it because he thought that the storage locker and the contents inside belonged to OPDS. They didn't. They belonged to Mr. Velasquez. When he was made aware of that, he refused to relinquish access to the storage locker. After Mr. Velasquez did receive counsel, he continued to interfere with that access. The court ordered that the key be turned over to his new counsel, and Logan refused because he didn't like the terms, because it had to occur in the jail in front of Mr. Velasquez. It led to a hearing on the matter. At that hearing, Mr. Logan suggested that the court do absolutely nothing, and he also suggested that anyone who entered the storage locker would become a witness in the civil suit, including Mr. Velasquez's attorney, which would have created a conflict with his attorney. So these are not individuals who are concerned about safekeeping property or returning it to Mr. Velasquez, because at the opportunities they had to return it to him, they never did. So at the end of the day, let's say you go back to district court and you proceed with your suit. What damages does he have? So Mr. Velasquez has sought compensatory and punitive damages. And what are they? So he is alleged mental and emotional distress, which is an injury recognized under Section 1983, and his own testimony about the mental and emotional stress of losing potentially the only copies of documents he has. But the documents are intact. We all agree on that, right? Correct. Okay. But he's also seeking injunctive relief, asking that the defendants no longer interfere with his property interests. Well, is that a realistic thing to ask for, meaning is there a realistic threat that they will interfere in the future? I mean, this storage locker thing has been resolved. There's always the possibility that, you know, Mr. Velasquez loses counsel again, and mere voluntary cessation of behavior does not move these claims. But, you know. So where is he now? He's still at the Fourth Avenue Jail. Okay. And the papers are still where? In the storage locker. Okay. And he has access to them now? Yes, through his defense counsel. Right, right, right. And, of course, qualified immunity does not apply as to the injunctive relief he sought. So my issue with injunctive relief is, is there enough of a threat that this might happen to him again, that injunctive relief is appropriate, right? Understood. And for injunctive relief, you know, as I said, voluntary cessation of behavior is not enough. The defendants have a heavy burden to show that this unconstitutional behavior is unlikely to reasonably occur. Well, you're beginning to overlap your argument of entitlement to an injunction with sort of the equitable requirements of imminence of harm and so on with mootness. Yes. I'm not asking you about mootness. I'm asking you about criteria for an injunction. Understood, understood. There is always the chance that if he loses, he has a conflict with counsel, the defendants could repeat their behavior, so. Okay. Do you want to reserve some time for rebuttal? I would love to. Thank you. And who's going to start? Thank you, Your Honor. May it please the Court, my name is Sean Moore, and I'm here representing Defendant Michelle McCloskey. I want to take four minutes and reserve the remainder of my time for my co-defendants. I'm going to talk about Rooker-Feldman, but the first thing I wanted to do is put this case in context. This is not a case where Mr. Velazquez ever asked for his files and was denied that access. Rather, he only asked that the custodian of those files be transferred from the Office of the Public Defenders to his family, and he alleges that defendants' failure to turn those files over to his family is a constitutional violation. Now, turning to Rooker-Feldman, this whole discussion of a one-step versus two-step test is irrelevant, I believe. The nut of the dispute is plaintiff's argument that there cannot be a de facto appeal without an explicit challenge or an explicit stating that a State court made a legal or factual error. And we do not believe that such an explicit challenge to the State court ruling is necessary for there to be a de facto appeal. And there is good Ninth Circuit law that says that this is not the case. Both the Cooper and Reusser cases state that a Federal case or Federal action can be a de facto appeal without actually explicitly challenging a State court action. And they consider this because, and there are several Ninth Court, Ninth Circuit cases that have said you look more to the relief sought by an action rather than the allegation stated by an action to determine whether or not there is a de facto appeal. Now, if you look at the relief sought in this appeal or in this action, what Mr. Velazquez is alleging is that it was inherently a constitutional wrong for defendants to maintain the files within the storage locker that was obtained specifically to house those files rather than transferring custody of the files over to his family. And in order to find that that that was, in fact, a constitutional wrong, this Court or the district court must necessarily undercut Judge Reuss's order specifically stating that access of the files is limited to the defense team rather than anyone else. And the fact of the matter is, once, specific to Defendant McCloskey, once there was a conflict with her representation of Mr. Velazquez, she was no longer a member of the defense team, she was no longer able to access those files. Now, the inexplicable. I don't know why this just isn't a lawsuit looking at what they did after the order was in place. Could you repeat that, Your Honor? I just don't understand. I don't understand the Rooker-Feldman argument here, because as I see the allegations in the complaint, what he's complaining about are the actions after the order was in place. Correct. Yes. And that's it. Well, the order was in place before he brought this action. I understand. Right. So they're – All this is about what happened after the order was in place. Correct. He's not seeking to overturn the order or undermine the order. It's their actions afterwards. Well, I mean, what they're saying is, or what Mr. Velazquez is arguing, is that the actions taken pursuant to that order and within the confines of that order are necessarily unconstitutional. And in order to find that the actions taken pursuant to that order are unconstitutional, then the order itself must be wrong or legally incorrect or factually incorrect. The fact of the matter – I mean, a court order on its own – But, I mean, we have all sorts of 1983 cases, for example, when there's a guardianship order in place and the guardian – there's some damage that occurred to the guardian or something like that. I mean, these are – they don't relate to the state court order necessarily. You don't immunize your client just because you have a state court order in place. It's not appealing. They're not seeking to overturn the order. Well, in order to find that defendants acted improperly, they must – there must be an inherent finding, or at least it's our position that there must be an inherent finding that the state court order was in some way wrongful, because Mr. Velazquez has never alleged, no one has ever argued that defendants did anything outside the realm of what Judge Reyes's order mandated. And in order for their conduct to be wrongful, that inherently must mean that Judge Reyes's order was wrongful. So we believe that as long as there's the possibility that defendants could be found liable, that's necessarily an indictment of Judge Reyes's order and a statement that the contents of his order was inherently wrongful. Unless you have further questions for me, I'd like to cede the remainder of my time to my co-defendants. Roberts. May it please the Court. My name is Karen Stafford on behalf of Defendant Appellee Tammy Hardy. And I would like to take my small amount of time before I turn it over to my co-defendants counsel to discuss your question about whether or not these defendants are state actors. And in particular, I'd like to spend my time talking about Appellee's Tammy Hardy and Michelle McCloskey, because they are, in a unique situation, they are private actors and they are not state actors and they are not acting. The only way that they become state actors is under the joint actor theory, right? I believe that, yes. I mean, that is the argument. So tell me why that doesn't apply. Well, so what Mr. Velazquez has argued is that because they jointly engaged in some action with Mr. Logan, that they somehow act under his color of state law. That doesn't work here. First of all, the actions that they are complaining about, Ms. Hardy and Ms. McCloskey didn't do those actions with Mr. Logan. So, for example, the taking of the documents to the storage locker, that was not in conjunction with a state actor. They did that on their own in compliance with the court order, of course. And actually in compliance with the arrangement that Mr. Velazquez agreed to and didn't raise any objection to in that hearing, he was represented by Mr. Talen, his counsel. They proposed this arrangement where the boxes would come to the storage locker and there was no objection. So this was, this arrangement was agreed upon and then Ms. McCloskey and Ms. Hardy carried out that arrangement. And they didn't do it in concert with any state actor. In terms of the key, Ms. McCloskey, I believe, I think the complaint is, is that her return of the key to Mr. Logan or the ODPS who paid for and is responsible for the storage locker is somehow done in concert with Mr. Logan, who they argue is a state actor. Again, first of all, this is not a prohibited action because Mr. Velazquez doesn't have any possessory interest in the key itself. His complaint is access. And as my colleague argued, he was never denied access. There's nothing in the record to show he ever asked for access or a particular box to be, you know, exchanged out of his cell. His interest is he wants the key to be in the possession of his sister. And that he doesn't have a right to. And so Ms. McCloskey's transferring the key to Mr. Logan per court order, and because Mr. Logan's office is responsible for that key, was not a joint action that was done to take a prohibited action or an unconstitutional action. Mr. Velazquez's attorney has listed about six cases in her brief to support this joint action theory, but not one of them did the court find that there was an actual joint action to find that a private actor acted under color of State law. And in fact, the appellant cites Collins v. Womancare, which is a Ninth Circuit case, and again, in that case, they did not find there was joint action. But the court laid out that the test for this is that there has to be a substantial degree of cooperation in the prohibited action, that the State has to so far insinuate itself into a position of interdependence with the alleged joint actor that it must be recognized as a joint participant in the challenged activity. There are no facts here to suggest that there is such a level of substantial cooperation between the State and Mrs. McCloskey or Mrs. Hardy. In fact, Ms. McCloskey and Hardy's involvement in this case is so minimal, we're looking at two things, transferring of boxes to the Fourth Avenue Jail, which was not done in concert with the State actor, and returning the key. And neither of those complained of actions can support the application of the joint actor test. Roberts. Thank you, counsel. I'm going to leave the remaining of my time to my co-defendant. Thank you. Good morning. If it pleases the Court, Mike Wierzinski, on behalf of Defendant Logan. In response to Judge Paye's inquiry about activities that occurred after Judge Reyes's order was entered, I've jotted a couple notes about the critical, what I believe is the critical timeline in this case. The change in the dynamic that Judge Reyes set up started on June 5, 2013, when Mr. Velazquez for the first time says, hey, I want to change who has the access, the manner of accessing the storage locker. That's when Mr. Logan and I believe the other defendants first become aware that he wants this change. A mere six days later, Mr. Logan and Mr. Velazquez are on the phone. At which time, Mr. Velazquez asks and Mr. Logan agrees to review Judge Reyes's court order. The interesting thing about that is the position that Mr. Logan had taken for six days, that, hey, I need to get a court to help me figure this out. I'm not sure who has access to him. And then after reading the order saying, hey, somebody specifically was given that access, now I really need the court to tell me who's going to have access to this, was consistent during both periods of time. And also, in terms of thereafter, Mr. Velazquez files a motion in state court seeking to have that access changed. That motion is heard by Judge Welty on 8-13-2013, at which time Judge Welty makes a determination as to those motions. There's actually two of them. And the determination is, we will take that up once the determination is made relative to whether you're representing yourself or whether you'll have somebody represent you. I would politely, I think I know where you come out on the Rooker-Feldman doctrine, but very politely I would suggest that that order could be the order, is the order, upon which the court would have to conclude to find relief for Mr. Velazquez that the court made an error. Did you want to address the merits? Yes, I would. Thank you, Your Honor. I think the Rooker-Feldman, honestly, I don't think it goes anywhere. Okay. The Supreme Court has trimmed down that doctrine. We've not applied it in a long time in this kind of context. But you have some good arguments on the merits, so I wanted to turn to that. And let me move those very, very quickly. And there's one factual predicate that I'd ask you to, I know you've reviewed it once, but I'd ask you to review it again because it's worthy of review. And it's the phone call Mr. Velazquez makes to Mr. Logan because two really important things happen there. One, Mr. Velazquez admits that what he wants to do by getting that access is to control, not actually get the files, but to control, and he has a discussion with Mr. Logan about there having been problems with the legal file. And he wants to make sure it doesn't happen with his files. The other thing it does is, in that discussion, Mr. Logan confirms that he's only holding on to the access to make sure nobody gets in there until a court decides. Moving on to the specific substantive constitutional basis, Your Honor, the reason why there's no Fourth Amendment issue here is there was no unreasonableness and there was no seizure, starting in reverse order. Under Atsin, there can't be a seizure here because there was no motivation to investigate violations of criminal or administrative or breaches of other statutory or regulatory standards. That motivation matter, there's a quote I should quote. Why do you need motivation? Don't you just need seizure? I don't believe so. Not under this circuit's ruling in the Atsin case. There has to be some act directed towards either promoting some, well, some act to promote some government interest. Some government benefit. I'm sorry? Government benefit or interest. That's right. I would say that, yeah, I think it's an either-or proposition. I'm not sure there's a huge difference between the two, but to the extent there is, I would agree with both, yes. But you tried to split out unlawfulness from seizure, and you wanted to say there's no seizure. That stuff to me goes to whether it's an unlawful seizure. Well, I don't think there was any unlawfulness either, Your Honor. That's a different argument, then. Right. But he is controlling access and denying access to others. That sounds to me like a seizure. He's not denying any access to Mr. Velazquez, none. Well, he is pendent the resolution of the dispute about the key. Well, and I don't want to be facetious about it, but because he's a convicted murderer with a capital sentence, he's not accessing that storage locker. There's nothing in the record to suggest he could go to the locker and get his materials. Of course I understand that. Right. And I'm truly not trying to be facetious. It is an important point, and it's not splitting hairs, particularly because the purpose Mr. Velazquez wanted served, safeguard my papers, was exactly what Mr. Logan was doing. In terms of the unreasonableness of the conduct, Your Honor, in the Mendez case, if the intrusion against the government's interest or the person's interest in their papers is justified by an equal interest, it's not unreasonable. I'm not sure you can say it's a matter of law, but that was my comment on unreasonableness. In terms of qualified immunity, Your Honor — What about the procedural aspects? He has a procedural due process claim. In terms of procedural due process, I think that there, to the extent — It's like a post-deprivation hearing here. Well, I think if there was a — If you assume a seizure or taking or something. And I apologize. I don't mean to interrupt you, Your Honor. I think if you assume this was a deprivation, then there was actually a pre-deprivation determination by Judge Welty. I mean, if not allowing Mr. Velazquez to have access to the access, the keys to access files is the deprivation, then there was a pre-deprivation hearing. It just is Mr. Velazquez agreed with that deprivation. And then when the structure fell apart with no substitute structure having been issued by the state court, then that matter was revisited by Judge Welty. And a determination was made. In court with Mr. Velazquez there, is that right? I can't tell you that personally. I wasn't in court. He appeared at several of the hearings, though. I believe he appeared at all of them. But I just can't tell you my own knowledge. And is the Office of Public Defender still continuing to represent Mr. Velazquez? My time is coming to a conclusion. I'm happy to answer that. The OPDS, the Office of Public Defense Services, never represented Mr. Yeah. Who's representing him now? He is represented by private counsel. Okay. That's all I need. And on that issue, Your Honor, very quickly, Mr. Logan has retired. The other folks, the other defendants aren't involved with Mr. Velazquez's case. Okay. Thank you. Thank you. Appreciate it. A couple points I would like to clarify. First, by Judge Reyes's order, Mr. Velazquez controlled his property. The defense counsel was not allowed to go into the storage locker whenever they wanted. They went in there when Mr. Velazquez asked them to exchange the documents for him. That was the entire purpose of Mr. Velazquez's, of that order. Mr. Velazquez controlled access to his property. And Mr. Velazquez, in the call with Mr. Logan, Mr. Logan made it very clear that he was not going to allow anybody access to this storage locker. So he did not make requests to exchange boxes because defendants made it clear that any attempts would be futile. He then, instead, immediately went to state court seeking redress. And he was not given a pre-deprivation hearing. Judge Welty did not address these issues. Judge Welty, you know, deferred making any determination. Deferring a determination is not the same as actually addressing the issues raised in Mr. Velazquez's motions. To address the state actor requirements, Collins v. Woman Care says that private actors can be state actors for purposes of Section 1983 liability when they are willful participants with actions of the, of state actors. And they mischaracterized Mr. Velazquez's complaints against them. It was not the exchange of boxes from the locker to his prison cell that was the seizure. But it, their actions when he called them and said, would you please return my mitigation investigative materials, as is his right as the client to have his client files. And, and they were, they called Mr. Logan, who is a state actor under this court's decision in Miranda v. Clark County, and followed his advice in refusing to grant him the access. When he requested the storage key, they asked Mr. Logan what to do, and they refused. They did not return the key to Mr. Logan. Mr. Logan called them and demanded that they go to the storage locker to retrieve the key because the key was being held at the storage locker. So their actions were all done at the direction of Mr. Logan, who is not bound by the, by the ethics of an attorney-client relationship. If there are no further questions, we would ask that this court reverse and remand the district court's decision. Thank you. Thank you, counsel. Thank you for your pro bono representation. Thank you all for coming up from Phoenix to argue today. And the case just argued to be submitted for decision.
judges: Thomas, W. Fletcher, Paez